Thank you. May it please the Court, my name is Matt Hayhurst and I'm here today on behalf of the appellant, the Apartment Store. I'd like to introduce Ed Kalashek, Mr. Kalashek and his wife, the owners of the Apartment Store. On behalf of them and on behalf of the Apartment Store itself, I'd like to thank you for giving us the opportunity to present an oral argument today. Does this case involve $1,200 in security deposits?  Yes. That's part of what's at issue, yes. I mean, the total amount involved here is $1,200. The underlying cases were alleging, among other things, the failure to return $1,200, yes. Okay. But I gather those underlying cases settled for a little bit more than $1,200? Yes, Your Honor, the underlying cases settled for $27,000, and when you add in the cost of defense, both of those cases were brought almost up to the point of trial, several depositions, experts, et cetera. The cases exceed $75,000. What difference would $1,200 make? Yes, Your Honor, the cases were bitterly disputed, and there were allegations of wrongdoing from one end to the other. And the Apartment Store is a small business with an important reputation in the community, and they fought the cases and fought them bitterly. And I was defense counsel or part of defense counsel for the Apartment Store in those underlying actions as well. And they settled it, or did they lose the trial? They settled both cases, Your Honor. Now, the briefing in this case focuses extensively on the duty to defend and how we believe that duty was breached. But before I get into that, I'd like to focus for a moment on what Mount Vernon should have done in this case, because that point of law is clearly established and crystal clear in Montana. When an insurance company is notified of a claim against its insured, it has a fiduciary obligation to protect its insured's interests. And in reviewing the complaint and reviewing the policy, there's any question whatsoever as to whether there's a potential for coverage. The insurance company has to defend. Now, that doesn't mean they're on the hook from that point until the end of the case, because they're able, under Montana law, to defend under reservation of rights. At that point in time, what they should do is investigate the claim. They have a duty to investigate. In fact, they even have a duty to investigate claims that may not be covered under the policy. And then finally, if there's any doubt at all at that point in time, the appropriate course is to file a declaratory judgment action. You know, I read the complaint pretty carefully, and it looks to me like the whole thing arises out of a dispute over the security deposit. That is the heart of Mount Vernon's defense, Your Honor. And why is that wrong? It's wrong, Your Honor, because the exclusions in this case, in fact, all of the exclusions in this case, contain the same prefatory language, which is arising out of, resulting from, and consequence of, or in any way involving. And then they list the exclusions. And under Montana law, that language is ambiguous as a matter of law. And Montana is in the minority on this rule. In the Pablo case ---- Is there a Montana case that is expressly considered this phrase, indirectly resulting from or in consequence of or in any way involving? The cases that are available, Your Honor, discuss arising out of and resulting from. There are no cases that I'm aware of that discuss the other language. Or in consequence of or in any way involving. And then if you come down to S, it says the return of rents, security deposits, or any other funds held by an insured, which is your client. Right. And in the Pablo case, Your Honor, you have a situation where a gentleman is driving a truck, towing a tractor behind him, and he gets in an auto accident. And they get sued for that accident. And they allege not negligence for the driving, but they allege failure to supervise the employee. Well, clearly the accident arose out of, involved, or the consequence of an automobile. But the Montana Supreme Court said, we're going to adopt a minority rule from Kansas. We're going to say the phrase arising out of is ambiguous. And we're going to say that unless that's the specific legal theory alleged. Do they go any further than saying arising out of is ambiguous? That's what the case says. Yes, Your Honor. So Judge Paez's question is, but here we have some additional language. It doesn't say just arising out of. Why isn't Pablo distinguishable based upon the fact that there, there was only arising out of, and here there was additional language that tended to be more specific? I think there's several responses to that, Your Honor. First, in the Farron case, which is a subsequent case, the Court considered the language resulting from. And without any hesitation whatsoever, the Court said, those phrases are equally ambiguous. And the quote from the case is, from the viewpoint of a consumer with average intelligence but not trained in the law or insurance business, the phrase resulting from the use is equally as ambiguous as the phrase arising out of the use. So you have a problem if they just use arising out of. You have a problem if they use resulting from. But here the exclusion is any claim made against any insured arising out of, directly or indirectly resulting from, or in consequence of, or in any way involving. That's a little more than both, than either Pablo or Farron or both of them put together. Are we going to have to decide what the Montana Supreme Court would do with this additional language? I believe that it's clear what they would do, Your Honor. From the Farron case, they quickly jumped from arising out of to resulting from. And as a matter of common sense and basic understanding, all of these phrases are similar. If you look at the word involving, it's the same as the word arising. The word arise, as stated in one of this Court's opinions, the Trout decision, it said arise means reasonable connection. The dictionary that I keep next to my office says the word involve means, among other things, to connect closely. They both mean connect. If arise out of is ambiguous, then its synonym is also ambiguous. And you can have the same analysis with respect to the word resulting from. Resulting means come about as a consequence. Again, that's my dictionary. If you look up the word involve, it also means to have as a necessary feature or consequence. They both mean consequence. And if resulting from is ambiguous, under Farron, then in any way involving doesn't solve the problem. You can't have two ambiguous phrases, clearly ambiguous under the law of the State of Montana, and then add additional verbiage to it and solve the problem. How could they have made this clearer? They would make it clearer by not using that language. Give me an example of how they could word it. They would say in the exclusion that the exclusion applies to claims specifically alleging the failure to return security deposit. And that's, in fact, what this exclusion would apply to, Your Honor. One of the claims that's alleged in this case is failure to return security deposit. Exclusion S would apply to that claim but wouldn't apply to any of the other claims. And what Mount Vernon has done here is they've taken the argument from the Pablo case used by the insurer there and regurgitated it here. There the insurance company said let's look to the predominant factual cause of this automobile accident. That's how we should decide these exclusions. And the Montana Supreme Court said no way. The Montana Supreme Court said that phrase is ambiguous, and you don't look to the predominant cause or to the core allegations, as they say in their brief. Instead, you look to the specific legal theory. And in any event, even if you add on these additional phrases to this, you end up with the interpretation from the perspective of the reasonable insurer of ordinary intelligence, and that reasonable person is confused. It doesn't clarify it by adding more language. And, in fact, there are other decisions that have held that the phrase arising or, excuse me, the phrase in any way involving is ambiguous. One of those cases was decided after the briefing was completed in this case and hasn't been brought to the Court's attention. It's a case called Church Mutual, and the citation is 347 F sub 2nd 880. It's a California case, and it discussed that language in any way involving. It was, in fact, the phrase was arising out of, indirectly or directly resulting from, or in consequence of, or in any way involving the breach of contract. And the California court said that's ambiguous. Do you have that citation in your brief? I don't, Your Honor. It was decided on the same day that we filed our reply brief. Well, you might provide the citation in the case to us afterwards. Sure. I'd be happy to, Your Honor.  I'd be happy to, Your Honor. And the cases that Mount Vernon relies on for this issue, in fact, the case that they cite in their brief on page 22, and they quote extensively from this case, arguing that the phrase in any way involving is not ambiguous, they leave out the sentence before that quote. And the sentence before that quote says, if the language of the policy is unambiguous as the parties concede it is in the present case. And they go on from there. In other words, the case they rely on, principally, was one where there was no dispute that the phrase was ambiguous. Here it's quite the contrary. And I think it's really critical that the court understand that this Kansas rule is a minority rule. It's a rule that's very specific. It's pro-insured. And it focuses on the specific legal theory only. And, in fact, although this is a minority rule, the Kansas Supreme Court recently reaffirmed that rule in a case called Crist. And there's a series of cases from Kansas, all of them like the Pablo case, where on its face the core allegations or predominant factual cause of an accident wouldn't be covered. And yet the Kansas Supreme Court says this phrase, arising out of, is ambiguous and must be strictly construed against them. The ---- What do you think is the ---- you indicated earlier that you thought the Montana Supreme Court would agree with your position. Is that correct? Say that again, Your Honor. I'm sorry. You said earlier that you thought the Montana Supreme Court were confronted with this very issue, that they would say that this entire clause or phrase or each part of it is ambiguous. Right. Is that right? Yes, I believe that, Your Honor. And should we consider certifying this question to the Montana Supreme Court? I think if the court has reservations about the meaning of this long phrase, I think that would be appropriate. But I don't think it's necessary. Because if you go back and look at the Wendell case, which is the first case where the court confronted this issue, one of the things that the court relied on was the fact that there was a split amongst other courts in interpreting this phrase and ultimately adopted this minority rule. And in this case, there is a split of decision about this word involving. It means several things. And, again, if it's ambiguous, if it's subject to more than one interpretation, the insurance company and this court absolutely has to choose the most narrow meaning to favor the insured. That's what the rules require. And that's not what they did in this case. Now, I'd like to discuss briefly the spoliation claim, because it's one of the claims that the court found didn't allege a wrongful act under the policy. It also found there was an exclusion, but it also said that there was no wrongful act alleged. And we believe that the spoliation claim is important because it alleges negligent spoliation of evidence. We discussed in our brief the Oliver case, which recognizes both of these causes of action, and the fact that the complaints in this case specifically allege duty. They allege the duty to preserve documents. That is the touchstone of a negligent spoliation claim. And, in fact, duty is the touchstone of any negligence claim. Although the claim is titled spoliation, when construed in favor of the insured, as it must be, it would allege negligent spoliation, which would be a wrongful act. And that conclusion is buttressed by the fact that in the negligence count, it alleges that the various acts alleged above were negligent. And in the general allegations of the complaint, it alleges that this document was not preserved. Therefore, the complaint alleges that the document was negligently not preserved. And I gather the document is the cleaning sheet or whatever it is, the check sheet? It is, Your Honor. And the fact that- Any alterations on it? Yes, Your Honor. And in Mount Vernon's brief, they suggest that the document was clearly altered intentionally. Right. And that just, in our view, represents a failure to understand the property management business in a college town like Missoula, Montana, where students are calling up and saying, we're moving out on June 1st, and then they call back two days later and say, we want to move out until a week later. That's just the life of a college student. That's just fine. That doesn't mean, though, that when a document is changed, it was done intentionally. That's true, but it's a document that has to do with how the security deposit is calculated, right? Yes, it's in part of it. Yes, Your Honor. I think it's important to- That's why the exclusion kicks in, if it's not ambiguous. If it were not ambiguous, then you'd have that argument. But a critical distinction is important here as well. The spoliation claim occurred and accrued after the security deposit issue arose. They claimed they didn't get back their security deposit, and later the apartment store didn't keep its documents in order. It doesn't relate to the security deposit. Even if you apply a reasonable reading and you say this isn't an ambiguous exclusion, it doesn't reach this far. The insurance company cannot take an exclusion with broad language and sweep in the entire claim. It ruins the reasonable expectations of the insured, and it's simply too broad. It has to be construed narrowly. That's what Montana law says and consistently says. And finally, I'd like to address briefly Exclusion C, which is the exclusion about antitrust and restraint of trade. The magistrate judge distinguished that case because the Bear case, which is by Judge Easterbrook, involved a similar exclusion but was titled price fixing. That's the principal reason how the magistrate distinguished it. Well, none of the exclusions in this case have titles on them. It would be unfair and unreasonable for the court to distinguish an exclusion for having a different title when it contains no title whatsoever. And, in fact, the important part of what led the court to its decision in Bear was the fact that they buried a provision relating to unfair trade practices amongst terms that talk about antitrust and restraint of trade. Again, when you look at the reasonable insured of ordinary intelligence, he or she would view that exclusion as dealing with businesses interacting with each other, not the way that businesses interact with their consumers. Admittedly, both interpretations may be reasonable, but the court must take the most narrow interpretation. I'd like to reserve the remainder of my time for rebuttal. Thank you, Mr. Hayward. May it please the Court. My name is Glenn Tremper. I'm from Great Falls, Montana. I represent Mount Vernon Fire Insurance Company. I believe the court is on to the main issue here, and that is, is this exclusion unambiguous or is it ambiguous? And I believe the court, from its questioning, appears to clearly understand the issue here. When you read the exclusion as it's stated, as Judge Paes read it, it's clear to a person of reasonable intelligence what is it designed to exclude. It is designed to exclude claims that involve in any way the return of a security deposit. But before we focus on the specific language of that exclusion, we should back up and employ the usual standards for interpreting insurance policy. As a contract, it is interpreted according to the four corners of the policy, and you can look at the context of the contract to determine the party's reasonable expectations. Here we have a property management company, which in Missoula, Montana, manages apartments for owners over the years. It has purchased a policy which is an errors and omissions policy that protects it against negligent acts or liability for negligent acts that may occur during the performance of professional services. The expectation of a reasonable insured who has purchased that policy is that if they fail to sweep a sidewalk and somebody is injured, that is an act of negligence and they are entitled to coverage. If it gets to a complaint, they are entitled to a defense of that complaint. There are other negligent acts that one could speculate that a person purchasing a business, purchasing an errors and omissions policy, would reasonably expect would be covered. But this policy has very clear expressed lists of claims which are not going to be covered under the policy. And it has that preparatory language which contains more than simply the language of arising out of or relating to. It contains language which makes it very clear what the intent of the insurer is and what the intent of the insured is when it purchased this policy. It provides the company shall not be liable to make payment for loss or defense costs in connection with any claim made against any insured arising out of, directly or indirectly resulting from, or in consequence of, or in any way involving the return of rents, security deposits, or other funds held by an insured. That provides clear expression of what the intent of the parties is. Well, I understand what you're saying and I think I understand English, but the courts have interpreted very narrowly any exclusions and interpreted broadly the insurance clause. If, in fact, they've said, as they have, that arising out of, which makes perfectly good sense to me, and resulting from, which also makes perfectly good sense to me, that those are ambiguous, why wouldn't in any way involving also be ambiguous? I think the Court would have to look at the cases which held that that language is specifically ambiguous, the Pablo case, the Ferrer case. Those were cases where somebody was arguing that the term arising out of required an analysis of what caused the accident. Did the fact that a person drove to the hunting site and then got out of the car and walked 200 yards and fired a gun and there was a defective bullet, did the automobile, the fact that they drove an automobile, cause this accident? Did it result from that accident? Clearly, those are unique circumstances and a unique claim that would be made. Here, there is no assertion that anyone, somebody is suggesting that there is a causation issue here. There is no requirement that the Court engage in an understanding of why these claims arose, because the exclusion deals with, makes it very clear that any claim that in any way involves the return of rents, security deposits, or other funds held by the insured is excluded. Maybe you could tell me why involving is more precise than resulting or arising. I think it is more precise, because involving, this is a case where I think additional words do clarify, because involving, Mr. Hayhurst explained how there is some authority that arising out of means the same as involving. It means some connection. And what the additional language of involving does in this context is it says what we mean is. It may add something to it, but my point is if the word resulting and the word arising are ambiguous words, wouldn't involving be an ambiguous word? No, I don't believe it would, because arising from and resulting from, as Mr. Hayhurst has suggested, can be interpreted as meaning involving. And the additional use of the language in any way involving makes it clear that what is intended is that meaning of those terms, not the meaning of the term that relates to causation and examination of why this accident took place. If you put the three, assuming that, I understand your argument, but if you assume that counsel is right, that involving is also an ambiguous word, if you put all three of them together, do you get something that's specific? I believe you do. Well, yeah. Maybe you could explain that for me, because if ordinarily 0 plus 0 plus 0 equals 0, why would 0 plus 0 plus 0 equal 1? Well, I'm not sure it's a mathematical formula. I think it is possible. Everything is economics, you know. Mathematical certainty. Judge Posner has done us great harm. Yes. Why don't you explain that? I don't believe it's a mathematical kind of analysis. I think what it is is a word that can mean involving, another word that can mean involving, and the additional phrase, in any way involving, makes it clear. This is the intent of the parties. So you think the total is greater than the sum of the parts to follow the math analogy? I believe it's true, yes. If you said in Pablo, in any way arising out of, would that have made a difference, do you think, the Supreme Court? I think the Supreme Court probably would have adopted the same ruling, because arising out of had the causation concept to it. At least that was one of the interpretations that was being provided. Would it have made a difference in Ferron to say, in any way resulting from? Again, I think the resulting from language implied a causation element, which the one is involving in any way, the other is resulting from or caused by, and we had two conflicting ambiguities. I think that's an important point to make here, and that is, is that under Montana law, you have an ambiguity where you have two similarly reasonable interpretations of a phrase, and we have not heard an alternate interpretation of this exclusion. Well, that brings me to Judge Paez's comment. Have you considered certification to let the people who have to ultimately make this decision? I thought that would be coming. I do not think that it's necessary in this case. I think there are additional reasons why the claim as alleged is not covered. Largely, it's because this complaint, when read on its face as a whole, alleges actions which are not negligent actions, which are intentional actions, acts intended to deceive. And we could get into the bramble patch of having to go through all the various allegations of the complaint. But to respond to the spoliation argument made by Mr. Hayhurst, the spoliation claim alleges on its face, as the magistrate judge indicated, it simply alleges that there was a doctoring of the document with the intent to deceive. There's no room to argue that it's negligent in any way. Well, if there's no ambiguity here, Judge Silverman is probably, his point earlier is probably correct, which is, you know, it's a document that relates to or involves the security deposit. So it will probably be covered. But the question is whether or not it's ambiguous. Yeah. And I'm going to take you back to the certification question for just a moment. Is there any, at least to my knowledge, that we didn't find any case where the in consequence of or in consequence, whatever it was, or involving. Is that correct? That's my understanding, yes. Right. Now, which courts did the, when the Montana Supreme Court is undergoing some sort of insurance contract analysis, does it look to a particular body of law to help guide it? I believe the Montana Supreme Court is a body unto itself. It doesn't really look to other courts? It will consider. Does it look to the majority view out there? That's hard to say. I mean, it will, I think typically, as a court, it will always follow majority law, but in certain cases, and where appropriate, it follows minority law. I do think we pointed out four cases where the phrase in any way involving was held to be unambiguous. There was a citation to a. . . Right. I realize that. Is it your best assessment that the Montana Supreme Court would follow that view if it was confronted with it? That is my assessment, yes. I believe that the Montana Supreme Court would follow its typical way of resolving its duty to defend cases, which is simply looking at the face of the complaint and looking at the policy. And at the face of the complaint, without any extra lawyerly effort to try to decide what could they be alleging, if the face of the complaint alleges acts which are not going to result in a judgment that is a covered loss under the policy, there is no duty to defend. And I believe that applying that, those principles, that the court would look at this as a clear and express exclusion. It has held that it will, wants to refrain from, you know, setting violent hands upon policy language in finding an ambiguity where there is no ambiguity. I believe the Montana Supreme Court would employ the same sort of analysis that this panel would apply in interpreting this policy. And therefore, I think that the ---- The Montana Supreme Court has taken cases from some certifications. Yes, it has. Several. It has. In the insurance area. I believe that is the case, yes. But I believe that this is an issue of law, it's an interpretation of the policy of the contract, and that is something that this Court is certainly capable of doing as well as the Montana Supreme Court. How common is this particular phraseology? Is this something that comes up every day in lots of policies, or is this unique to this E&O policy? I believe it is typical in errors and omission policies. If you run a search with this particular language in ---- This exact language? Exact language, you will uncover a number of different kinds of cases. All of them are errors and omission policies typically involving professional services. I think I cited a securities ---- a case involving a securities group that was sued for ---- there was a suit involving a claim that actually had been resolved previously. That was considered here. I think it's fairly typical, which, of course, raises the point. Here we have ---- we've cited four cases where the language is determined to be unambiguous. There was this California district decision which was just cited to me. It was not included in the briefing or in the additional citations that were submitted in the last few weeks. I don't have the opportunity to respond to that. But I suspect that, again, if we apply the rules that the Montana Supreme Court will apply, reading the contract as a whole, understanding the context of the contract, these parties did not understand that this policy was to be applied to anything but negligence. You know, if you are an insurer and you're insuring a property manager in a college town, you know there's going to be disputes about security deposits. And that is something that's going to be excluded. If this Court were to find that that is included within the policy, it's going to significantly change the bargain that these parties enter. Security disputes are going to ---- security deposit disputes are going to rise all the time. And will this insurer have to respond to every single one of those claims? So we've covered, in my mind, the key issue, and that is that this ambiguity ---- there is no ambiguity in the exclusion, and that the negligent acts and omissions that are alleged to exist somewhere in the complaint have yet really to be pointed out to us. They have identified four counts that they say raise the duty to defend. Those four counts, three of them are really skeleton counts that simply say the acts as alleged above constitute breach of the implied covenant, negligence, or a violation of the Montana Consumer Protection Act. And so you have to look at what are those acts that are alleged above. We've never really heard what those are. In the briefing, those acts are described as including a prohibited provision in the lease. Well, and that's one of them. The other is not following the proper move-out policy. And the third is destruction of a document. If you look at the complaint and you look at the allegations about the lease document, in count two of the complaint, it is alleged that there was an intentional inclusion of a provision in the lease that violated Montana law related to the non-refundability of security deposits. And it goes on to allege that clearly the department store intended to have that improper provision in the lease because it included it four different times. It's impossible to look at those two allegations in the complaint and interpret that as a negligent act. It appears to be an allegation of an intentional act. And in any regard, it affects a security deposit. It's related to a provision about the non-refundability of a security deposit. The second element that they've identified as possibly some of these acts that are referred to above has something to do with an improper move-out procedure. Well, I have a difficult time finding that alleged in the complaint. Again, it is a bramble bush to go through the complaint, but it appears that there are allegations that a move-out checklist was not provided to these parties. A move-out checklist is something that is to be provided according to the lease and according to statute. If something isn't provided according to the lease, that would be a breach of contract, not a negligent act. And in any event, this move-out schedule, as I understand it, I think it's alleged, involves what deductions are going to be appropriate for the party to take against the security deposit. Again, it somehow involves the security deposit. That leads us to the spoliation allegation. And again, the complaint is replete with allegations that this wasn't simply an accidental or negligent failure to preserve lease documents. For example, Paragraph 60, which is one of the allegations alleged above, reads that the dependents, knowing they had forfeited their right to deduct from plaintiff's security deposit by law, altered the original statement of disposition of the security deposit sheet by changing the dates to support its false representations and concealment of material fact. That does not appear to be a negligent action. Similarly, in the Count 10, there are two complaints. They're both essentially identical, but the numbering of the counts does change. Count 10 of the first case, the Melby case, dealing with spoliation of evidence, reads that in Paragraph 98, dependents attempted to and did destroy evidence relevant to the plaintiff's claim. 99, dependents' destruction of evidence was designed to cast factual doubt on an otherwise factually indisputable claim. Again, not simply misplacing a document or somehow unknowingly altering a date that what they didn't know was going to be important. This is alleged to be some intentional act. Finally, it is clearly something that is involved in the return of the security deposits. In Paragraph 101, it reads, had defendants never altered the evidence, plaintiff's claim for a full return of the security deposit would have been factually indisputable. So those are the key issues. The exclusion is not ambiguous. It's clear. It applies to any claim arising out of a security deposit. And they've not alleged any acts which fall within the scope of coverage of a negligent act, error, or omission. Unless the Court has any further questions, I'll leave the balance on my time. It's not. Thank you, Mr. Trimper. Mr. Hayhurst, you get the last word. Thank you, Your Honor. 0 plus 0 plus 0 doesn't equal 1. That is the heart of this case. You can't take two ambiguous phrases, add in more words, and clarify it. It just doesn't work. And, in fact, when Mr. Trimper was concluding and discussing what this exclusion means, he said it means it excludes claims arising out of the return of a security deposit. We'll go back to arising out of. And, again, arising out of is, as a matter of law, ambiguous. And I recognize that this is a minority rule. I recognize that it's a very narrow view of what these exclusions are. But the law of Montana is what governs this case. That's undisputed. And Montana has been completely clear when it comes to these kind of exclusions. It looks to the specific legal theory. It's a Kansas rule, and the Kansas cases decided under this rule hold the same thing. You can't read it broadly because the insurance company has a duty to do just the opposite. Has Kansas construed the or in any way involving language? Say that again, Your Honor. Has Kansas dealt with the or in any way involving? Unfortunately, I'm not aware of any case to that effect. But there are several cases. In fact, there's four or five cases in this line of authority in Kansas leading up to this Chris decision of, I think, just last year where they reaffirmed this rule. And all of these cases are just like the Pablo case where you have an automobile accident and there's an exclusion for arising out of an automobile accident. And the court says if you allege a claim for negligent supervision, then the exclusion doesn't apply. That's exactly what has happened here. There's an exclusion with this broadly written prefatory language that's ambiguous, and it relates to security deposits. Well, that precludes one claim and one claim only, and that is the claim for withholding of security deposits. That's the only one because that's the specific legal theory that the Montana Supreme Court looks to. And, of course, this court has to follow Montana law. Now, Judge Paez brought up the opportunity or the possibility of certifying the question. Well, I would submit that if the court has any doubts as to what the Montana Supreme Court would do, then the appropriate course of action would be to certify the question. But I think if you look to the Kansas rule and the way that it developed and the fact that Montana, in fact, didn't follow the majority view, it adopted the minority view. Montana is a very pro-insured state, and the fact that they adopted this Kansas rule demonstrates that. Now, there's a lot of discussion about the fact that this whole case involves intentional acts. Well, again, I find it ironic because the insurance company did no investigation at all. And, in fact, the complaints contain a claim for negligence. It's straight out alleged negligence. And what the Montana Supreme Court has said is the only time an insurance company can ignore that kind of a negligence claim is if there's undisputed evidence that it was an intentional act. And there's two cases. One's called Burns involving an assault, and there's another one called Strecker involving a sexual assault. And in those cases, there was a guilty plea to these crimes. And in one of the cases, Burns, there was an in-depth investigation by the insurance company where they determined that, in fact, this occurred intentionally. And the Montana Supreme Court, in a case called List, which is cited in our briefs, explained these cases and said unless the evidence is undisputed that these were intentional acts, the negligence claim triggers coverage. That's what they said, and that's what should happen here. Now, Mr. Tremper talked about the fact that this was a violation of contract, perhaps, that that could be one of the claims alleged here. Well, the duties of landlords in Montana are governed by the Landlord-Tenant Act. It's incredibly expansive. And what the Montana Supreme Court has said is when a landlord or a property manager violates that act, it's negligence per se. Again, we go back to negligence, which would be a covered act under this policy. Thank you, Mr. Hayhurst. Mr. Tremper, thank you, too, very much. The case to start you just submitted. The last case on the calendar has already been deferred for submission pending settlement.
judges: Wallace, Silverman, Paez